**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PAUL A. JAMES** | **CIVIL ACTION** |
| **VERSUS** | **NO.  10-1903** |
| **WARDEN RUSSELL BUTLER, LOUISIANA DEPARTMENT OF CORRECTIONS** | **SECTION  "R"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Procedural Background

On August 26, 2011, the undersigned Magistrate Judge issued a Report and Recommendation recommending that the petitioner Paul A. James's request to dismiss and abandon his fourth[2] and

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Ineffective assistance of counsel pretrial and at trial for failure to communicate with James, failure to call a witness, failure to challenge the police report for lack of probable cause.

seventh[3] claims be granted and those claims dismissed without prejudice and that James's petition as amended for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be dismissed without prejudice for failure to exhaust state court remedies as to his fifth[4] and sixth[5] claims. James filed a response to the Report and Recommendation in which he requested that his unexhausted fifth and sixth claims also be dismissed and that the remaining exhausted claims be reviewed by the Court.[6] In addressing the Report and James's response, the District Judge adopted the recommendations and granted James's request.[7] The Court ordered that James's fourth, fifth, sixth, and seventh claims be dismissed, and the Court referred the matter to the Magistrate Judge for issuance of a Report and Recommendation addressing the remaining claims.

## II. __Factual Background__

The petitioner, Paul A. James ("James"), is a convicted inmate currently incarcerated in the Richwood Correctional Center in Monroe, Louisiana.[8] On December 20, 2005, James and a co-defendant, Sarah B. Latiolais, were each charged in two bills of information in St. Tammany Parish with one count of possession of cocaine in Case No. 405403 and one count of possession of marijuana in Case No. 405404.[9]

---

[3]Ineffective assistance of counsel for failure to call witnesses or prepare a defense.

[4]The police had no warrant to enter his home.

[5]The laboratory returned the wrong evidence and counsel was ineffective for failing to challenge this.

[6]Rec. Doc. 23.

[7]Rec. Doc. 24.

[8]Rec. Doc. 18.

[9]St. Rec. Vol. 1 of 4, Bill of Information, 12/20/05.

The record reflects that, on or about November 15, 2005, during the early morning hours, several officers of the St. Tammany Parish Sheriff's Office arrived at a trailer home located at 21339 Progress Street in Covington, Louisiana.[10]  The officers were seeking to execute an arrest warrant for Sarah Latiolais on unrelated traffic violations and had received information that she was residing at that address.   Deputy Alex Dantagnan, Sergeant Allen Williams, and Deputy Ben Godwin approached the front of the residence, while Corporal Danny LeBlanc positioned himself near the rear of the residence.  After Deputy Godwin knocked on the door and announced their identification as members of the sheriff's office, the officers heard movement inside of the trailer.  Latiolais was present in open view when Paul A. James, Jr., opened the door.  The officers entered the trailer and proceeded to arrest Latiolais.

As Corporal LeBlanc restrained Latiolais, he observed what appeared to be a pipe used to smoke crack cocaine on a counter that divided the kitchen and living room area of the small trailer. Corporal LeBlanc notified the other officers of his observation and seized the item.  Deputy Dantagnan and Sergeant Williams observed James, who began to fidget, look around the trailer while avoiding eye contact with the officers, and placed his hands in his pockets.  The officers instructed him to remove his hands from his pockets.  James complied but within seconds placed his hands in his pockets again.  Deputy Dantagnan developed safety concerns and decided to conduct a pat-down search of James.   During the search, Deputy Dantagnan felt a cylindrical object that James simultaneously identified as a "crack pipe."  Deputy Dantagnan seized the object.

---

[10]The facts of the case were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. James*, 968 So.2d 255 (La. App. 1st Cir. 2008) (Table); *State v. James*, No. 2007KA2400, 2008 WL 2332237, at *1 (La. App. 1st Cir. Jun. 6, 2008); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2007-KA-2400, pp. 2-4, 6/6/08.

Immediately subsequent to the seizure of the crack pipe from James's pocket, Deputy Dantagnan informed James of his *Miranda* warnings, placed him in handcuffs, and conducted a search incident to the arrest. The Deputy located a small amount of a green, leafy substance suspected to be marijuana in James's right, front pocket. Deputy Dantagnan asked James for consent to search the trailer, and he agreed. Deputy Dantagnan noted that the cushion on a nearby chair was elevated. Sergeant Williams lifted the cushion and retrieved a green handbag that contained a large amount of suspected marijuana and a film canister. The film canister contained suspected crack cocaine. A small clear plastic bag of suspected crack cocaine was recovered from underneath a mattress in the bedroom area of the trailer.

James was separately tried before a jury in Case No. 405403 on December 4 and 5, 2006.[11] He was found guilty as charged of possession of cocaine.[12] At a hearing held February 2, 2007, the Trial Court sentenced James to serve five years at hard labor on that conviction.[13] The Court also denied James's motions for directed verdict and for new trial.[14] On October 10, 2007, James entered a plea of guilty to a multiple offender bill filed by the State, and the Trial Court re-sentenced him to serve six years at hard labor.[15]

---

[11]St. Rec. Vol. 1 of 4, Trial Minutes, No. 405403, 12/4/06; Trial Minutes, No. 405403, 12/5/06; Trial Transcript, No. 405403, 12/4/06; St. Rec. Vol. 2 of 4, Trial Transcript (continued), No. 405403, 12/4/06; Trial Transcript, No. 405403, 12/5/06.

[12]St. Rec. Vol. 1 of 4, Verdict of the Jury, 12/5/06; Trial Minutes, No. 405403, 12/5/06; St. Rec. Vol. 2 of 4, Trial Transcript, No. 405403, 12/5/06.

[13]St. Rec. Vol. 1 of 4, Sentencing Minutes, No. 405403, 2/2/07; St. Rec. Vol. 2 of 4, Sentencing Transcript, No. 405403, 2/2/07.

[14]*Id.*; St. Rec. Vol. 1 of 4, Motion for Directed Verdict, No. 405403, 2/2/07; Motion for a New Trial, No. 405403, 2/2/07.

[15]St. Rec. Vol. 1 of 4, Multiple Bill, No. 405403, 4/24/07; Multiple Bill Hearing Minutes, No. 405403, 10/10/07; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, No. 405403, 10/10/07.

That same day, James also entered a plea of guilty to the charge of possession of marijuana in Case No. 405404.[16] The Trial Court sentenced him to six months in the parish jail, concurrent with the sentence in Case No. 405403.[17] James did not seek further review of this conviction or sentence.

On direct appeal to the Louisiana First Circuit Court of Appeal from his conviction in Case No. 405403, James's counsel raised assignments of error:[18] (1) the Trial Court erred in proceeding to trial without James's presence; (2) the Trial Court erred in denying the motion to suppress where consent was not communicated; and (3) the Trial Court erred in allowing the State to introduce other crimes evidence without a hearing and a mistrial was requested. On June 6, 2008, the Louisiana First Circuit affirmed James's conviction, multiple offender adjudication, and sentence, finding no merit to the claims raised.[19]

On July 9, 2008, James's counsel filed a writ application with the Louisiana Supreme Court in which he argued the following:[20] (1) the Louisiana First Circuit erred in holding that the search was consensual; (2) the Louisiana First Circuit erred in holding that a search warrant was immaterial; and (3) the Louisiana First Circuit erred in holding that exigent circumstances existed for the police to enter the home.

---

[16]St. Rec. Vol. 1 of 4, Guilty Plea Minutes, No. 405404, 10/10/07; St. Rec. Vol. 2 of 4, Guilty Plea Transcript, No. 405404, 10/10/07.

[17]*Id*.

[18]St. Rec. Vol. 4 of 4, Appeal Brief, 2007-KA-2400, 2/20/08.

[19]*State v. James*, 968 So.2d at 255; *State v. James*, 2008 WL 2332237, at *1; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2007-KA-2400, 6/6/08.

[20]Rec. Doc. 20-1, p. 7, La. S. Ct. Writ Application, 08-K-1545, 7/9/08 (postal metered 7/7/08).

On November 5, 2008, James filed a *pro se* supplemental brief in which he raised the following issues:[21] (1) the Louisiana First Circuit and the Trial Court erred in holding that the execution of the arrest warrant was proper, that the intrusion was reasonable without exigent circumstances, that the evidence seized was admissible, and that James's arrest was valid and constitutional; (2) the Louisiana First Circuit and the Trial Court erred in holding that James voluntarily absented himself from the trial proceedings; (3) the Louisiana First Circuit and the Trial Court erred in holding that the references to other crimes evidence was not subject to prior notice and was not prejudicial, and that a jury admonition was sufficient; (4) the Louisiana First Circuit and the Trial Court erred in allowing habitual offender proceedings while the direct appeal was unresolved; (5) the Louisiana First Circuit erred in placing limits on James's access to transcripts; and (6) James received ineffective assistance of counsel.

On March 4, 2009, the Louisiana Supreme Court denied the writ application without stated reasons.[22] James's conviction became final 90 days later, on June 2, 2009, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[21]Rec. Doc. 20-2, pp. 1, 6, Pro Se Supplemental Brief, 08-K-1545, 11/5/08 (dated 10/21/08); *see also*, St. Rec. Vol. 3 of 4, Pro Se Supplemental Brief, 08-KH-1545, 11/12/08.

[22]*State v. James*, 3 So.3d 470 (La. 2009); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2008-K-1545, 3/4/09.

## III.    State Procedural Background

On June 14, 2009, James submitted an application for post-conviction relief to the Trial Court in Case No. 405403 raising the following grounds for relief:[23] (1) ineffective assistance of counsel for failure to pursue motions to quash and to suppress evidence knowing that the evidence was obtained pursuant to an unlawful entry and illegal search and seizure; (2) the State abused its discretion by failing to disclose evidence favorable to the defense and by introducing tainted evidence into the voir dire, opening statements, and trial; (3) the Trial Court admitted insufficient evidence of the green handbag and its contents and the bag found under the cushion of the chair; (4) ineffective assistance of counsel by failing to see and act upon evidentiary discrepancies; (5) ineffective assistance of counsel for failure to move for a mistrial or argue regarding James's absence from trial; (6) ineffective assistance of counsel for failing to call Latiolais as a witness about her identity and address and cross-examine her about the facts; (7) ineffective assistance of counsel for failure to inspect, video tape, or photograph James's residence for use at trial; (8) ineffective assistance of counsel for failure to object to the use of all prior guilty pleas for sentencing purposes without waiver and notice of James's appellate rights; and (9) appellate counsel was ineffective for raising three claims on direct appeal and for failing to raise two of the claims to the Louisiana Supreme Court for its review.

He submitted a second application in the same case on July 2, 2009,[24] raising the same nine claims and adding a tenth claim, arguing that counsel was ineffective for failure to act professionally and advocate his client's case and file proper motions, including interviewing prospective witnesses.

---

[23]St. Rec. Vol. 3 of 4, Application for Post-Conviction Relief, 6/18/09 (dated 6/14/09).

[24]St. Rec. Vol. 3 of 4, Application for Post-Conviction Relief, 7/9/09 (dated 7/2/09).

7

On July 28, 2009, the Trial Court denied the second application as untimely filed.[25]  The Court thereafter issued a separate judgment on August 26, 2009, addressing each of the ten claims individually, and finding each to be either repetitive of matters raised on appeal and/or to be without merit.

In the meantime, on August 27, 2009, James filed a writ application with the Louisiana First Circuit arguing that the Trial Court erred in denying his application for post-conviction relief as untimely.[26]  On October 26, 2009, the Court determined that the Trial Court erred in so ruling and remanded the matter for the Trial Court to reconsider the application for post-conviction relief.[27]

On November 30, 2009, the Trial Court reissued its prior judgment addressing the merits of James's post-conviction claims.[28]  According to the record before the Court, James sought no further review of this ruling.[29]

## IV.  **Federal Habeas Petition**

On May 3, 2010, the clerk of the United States District Court for the Western District of Louisiana filed James's petition for federal habeas corpus relief, in which he raised the following grounds for relief:[30] (1) the Louisiana First Circuit erred in holding that the search was consensual

---

[25]St. Rec. Vol. 3 of 4, Trial Court Order, 7/28/09.

[26]St. Rec. Vol. 4 of 4, 1st Cir. Writ Application, 2009-KW-1619, 8/28/09 (dated 8/27/09).

[27]St. Rec. Vol. 3 of 4, 1st Cir. Order, 2009-KW-1619, 10/26/09.

[28]St. Rec. Vol. 3 of 4, Trial Court Judgment, 11/30/09.  The Trial Court also later denied James's motions to amend the application, to correct his sentence, and for an alternative punishment to imprisonment.  St. Rec. Vol. 3 of 4, Request for Leave to Amend Post-Conviction Application, 11/30/09; Trial Court Order, 1/12/10; Motion to Correct Illegal Sentence, 11/30/09; Trial Court Order, 1/12/10; Motion for Alternative to Traditional Imprisonment, 3/22/10; Trial Court Order, 4/6/10; Motion to Withdraw, 3/29/10; Trial Court Order (2), 4/6/10; Motion for Alternative to Traditional Imprisonment, 3/29/10; Trial Court Order (3), 4/6/10.

[29]The Court has confirmed with the clerk of the Louisiana Supreme Court that James has filed no writ applications in that Court since Writ No. 2008-K-1545 following the direct appeal.  *See also*, Rec. Doc. 20, p. 1.

[30]Rec. Doc. 1.

based on oral consent; (2) the Trial Court erred in denying the motion to suppress the evidence; (3) the Trial Court erred by conducting the trial without James's being present in the courtroom and counsel was ineffective for failure to explain his absence; (4) counsel was ineffective during pretrial and trial in failing to communicate with James, failing to call Latiolais as a witness and in failing to challenge the police report to establish a lack of probable cause to be at James's home; (5) the police did not have a warrant to enter his home; (6) the lab returned the wrong evidence after testing and this should have been suppressed, and counsel was ineffective for failing to challenge this; and (7) counsel was ineffective for failure to call witnesses or prepare a defense.

James was granted leave to amend his petition by the previously assigned Magistrate Judge.[31] By that amendment, James specifically sought to "abandon ground (4); ground seven (7); and ground (3) of the original petition."[32]  In spite of this, James also sought to amend his claims to include the following additional arguments:[33] (1) Claim One was amended to include that the Trial Court erred in denying the motion to suppress; (3) Claim Three was amended to argue that he is entitled to a new trial based on his absence from the prior trial; and (6) Claim Six was amended to argue that the Trial Court erred in denying the motion for mistrial based on the State's reference to other crimes evidence.

In the prior Report and Recommendation, the undersigned questioned why James wanted to abandon Claim Three in his amended complaint yet provided additional arguments in support of the claim in the same amendment.  To protect his rights, the Court decided to allow Claim Three to remain urged as amended.

---

[31]Rec. Doc. 14, 15.

[32]Rec. Doc. 16.

[33]Rec. Doc. Nos. 14, 15, 16.  Although James confused his numbering, his intent was made clear.

As recited above, based on the prior rulings of the Court, Claims Four, Five, Six and Seven have already been dismissed by the Court and will not be addressed herein.[34]

As previously reported, the State filed an answer and memorandum in opposition to James's original petition conceding its timeliness and arguing that James failed to exhaust state court remedies as to all of the claims raised. The State did not respond to the amended petition.

## V. <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on April 28, 2010.[36] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

---

[34]Rec. Doc. 24.

[35]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Western District filed James's petition on May 3, 2010, when the filing fee was received. James dated his signature on the form petition on April 28, 2010. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

In this case, the State conceded, and the Court has already determined that, James's petition was timely filed. The State also argued that James failed to exhaust state court remedies as to each of the claims raised in his petition. The Court has already resolved the exhaustion issue and will proceed to address the substance of the remaining claims.

## VI.    <u>Standards of Review on the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.

*Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VII.   Non-Consensual, Warrantless Search and Denial of the Motion to Suppress (Claim Nos. 1, as amended, and 2)

James alleges that the Louisiana First Circuit erred in holding that the search of his trailer was consensual based on oral consent given to the officers.  James argues that the officers did not obtain his consent and, by their own actions, caused any exigent circumstances by turning off the lights and seeking entrance into the trailer without a warrant.  He also claims that, because there was no warrant or legal basis for the search, the state courts erred in denying the motion to suppress the evidence.

The Trial Court heard argument on the defendant's motion to suppress prior to trial.[37]  After hearing testimony from Deputy Alex Dantagnan and argument of counsel, the Trial Court denied the motions to suppress the evidence and statements finding that the statements and evidence were properly seized.[38]

James's counsel also challenged the denial of the motion to suppress the evidence on direct appeal.[39]  He argued that the consent for the search was not adequate and that no other exception to the warrant requirement existed to support the officers' entry into or search of the trailer.  The Louisiana First Circuit found no merit to the claim and resolved that the arrest warrant gave the officers authority to enter the trailer, because they had reason to believe that Latiolais was inside.[40] The Court also found that because exigent circumstances existed the officers had cause to enter.  The Court went on to find that James consented to the search of the trailer.  This was the last reasoned opinion on this issue, because the Louisiana Supreme Court denied the subsequent writ application

---

[37]St. Rec. Vol. 1 of 4, Trial Minutes, No. 405403, 12/5/06.

[38]St. Rec. Vol. 2 of 4, Trial Transcript, p. 207, No. 405403, 12/5/06.

[39]St. Rec. Vol. 4 of 4, Appeal Brief, 2007-KA-2400, 2/20/08.

[40]*State v. James*, 968 So.2d at 255; *State v. James*, 2008 WL 2332237, at *1; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2007-KA-2400, 6/6/08.

without stated reasons. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted) *Id.*, 428 U.S. at 494. A "full and fair" hearing as contemplated by *Stone v. Powell* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, at 1192.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the

fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply. *Id*., at 320. The Fifth

Circuit also has held that the *Stone v. Powell* bar applies despite an error by the state court in deciding

the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th

Cir. 1978).

Therefore, "in the absence of allegations that the processes provided by a state to fully and

fairly litigate fourth amendment claims are routinely or systematically applied in such a way to

prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates

that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with

equal force to procedural mistakes that thwart the presentation of fourth amendment claims."

*Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also*, *Janecka*, 301 F.3d at 321 (same).

Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his

request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428

U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at

1372.

James does not allege or demonstrate that Louisiana state courts routinely or systematically

preclude litigation of a defendant's Fourth Amendment claims, and as is shown in the record, he

received appropriate review in the state courts. Moreover, "[I]t is beyond cavil that Louisiana courts

provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No.

06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and

Recommendation).

In this case, James raised his Fourth Amendment claims in the pretrial motion to suppress and

on direct appeal. As outlined above, the state trial court denied the motion to suppress finding that

the evidence was properly seized under the circumstances. The Louisiana First Circuit also denied

his claim on direct appeal, as did the Louisiana Supreme Court in his subsequent writ application. *See Ylst*.

The record, therefore, demonstrates that James was provided with ample opportunity to and did present his Fourth Amendment claim, although his efforts were unsuccessful. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted). Each of the state courts considered and reviewed his arguments finding them to be without merit. *Accord*, *Ylst*. The fact that petitioner may disagree with the state courts' decision to deny relief is not sufficient to overcome the bar in *Stone v. Powell* to federal habeas corpus review. *Janecka*, 301 F.3d at 320-21. The review at all levels of the state courts was sufficient to meet due process requirements.

James is not entitled to federal habeas court review of his Fourth Amendment claims. Because he received and exercised the opportunity for a full and fair hearing in the state courts, *Stone v. Powell* bars consideration of his Fourth Amendment claim here.

**VIII.** **Absence from Trial**

James alleges that the Trial Court erred by conducting the trial without him being present in the courtroom. He claims that this denied him due process and entitled him to a new trial. James alleges that he notified counsel's office on the day before trial to advise that he was ill. On the morning of trial, he called again and spoke with the secretary to advise that he was ill and wanted a

continuance of the trial. He complains that this message was not conveyed to the state trial court to explain his absence.[41]

James's counsel raised this claim on direct appeal. The Louisiana First Circuit found, as did the Trial Court, that James voluntary absented himself from the second day of trial.[42] The Court further held that, because his attorney was present, due process requirements were satisfied under La. Code Crim. P. arts. 831 and 832 and related state law.

As an initial matter, to the extent James complains that the state trial court violated Louisiana law in proceeding with the trial in his absence, the alleged violation of state laws does not merit federal habeas corpus review or relief. *Accord Swarthout v. Cooke*, __ U.S. __, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law); *see also*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Instead, federal habeas review is limited to reviewing whether a state prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal habeas corpus court, therefore, will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is

---

[41]As part of this claim as presented to this Court, James also reiterated his argument that his counsel was ineffective for failing to explain his absence and for failing to call a witness to testify regarding the facts of the illegal search. As has already been held by the Court, James's ineffective assistance of counsel claims, including these arguments, were raised for the first time on post-conviction review and were not exhausted in the state courts and have already been dismissed from this action. The only exhausted portion of the claim is the denial of the right to be present which was raised on direct appeal.

[42]*State v. James*, 2008 WL 2332237, at *1; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2007-KA-2400, 6/6/08.

proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Considering federal standards, the Sixth Amendment establishes a criminal defendant's right to be present at trial and "to be confronted with the witnesses against him . . ." U.S. Const. amend. VI; *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995). This right is not absolute and can be waived by the voluntary absence of the defendant.[43] *Clark*, 70 F.3d at 388 (citing *Taylor v. United States*, 414 U.S. 17, 19-20 (1973)). In *Taylor*, the Supreme Court held that a defendant has no right to interrupt trial by his voluntary absence and his absence acts as a waiver of the right to be present. *Taylor*, 414 U.S. at 20.

In that case, the defendant Taylor was present for the beginning of his federal criminal trial on four counts of selling cocaine, including jury selection, and he failed to return for the afternoon session. He was present when the trial court announced that the lunch recess would last until 2:00 p.m. and the defendant told his attorney he would be back at that time for trial. When Taylor did not return, the trial court recessed until morning. Taylor again did not appear when the case was called the next morning. Taylor's wife told the court that she had not heard from him since the prior day's lunch break. The court determined that Taylor voluntarily absented himself from the remainder of trial. The court admonished the jury that no inference of guilt could be drawn from his absence. He was found guilty of the four counts.

Taylor on appeal suggested that he did not specifically waive his right to be present and had not been expressly warned of his right to be present or that the trial would continue in his absence.

---

[43]Although the Fifth Circuit has held that a federal court must engage in an on-the-record balancing test before proceeding with a criminal trial against the absent defendant, *see United States v. Benavides*, 596 F.2d 137, 138-39 (5th Cir. 1979), the Court has resolved that it is "powerless to impose this test on state courts in federal habeas actions." *Clark*, 70 F.3d at 390.

The Supreme Court held that his absence was sufficient waiver and that he was not entitled to any such notice of his rights:

> It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, *see Stack v. Boyle*, 342 U.S. 1, 4-5, 72 S.Ct. 1, 3-4, 96 L. Ed. 3 (1951), entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us, as it did to the Court of Appeals, "that a defendant who flees from a courtroom in the midst of a trial-where judge, jury, witnesses and lawyers are present and ready to continue-would not know that as a consequence the trial could continue in his absence." 478 F.2d, at 691 . . . As was recently noted, "there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." *Illinois v. Allen*, 397 U.S. 337, 349, 90 S.Ct. 1057, 1063, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring).

*Taylor*, 414 U.S. at 20.

Like the defendant in *Taylor*, the record here demonstrates that James was present for the first day of trial during jury selection.[44] At 9:50 a.m. on the second day of trial, the Trial Court noted on the record that James had failed to appear.[45] The court noted that it had advised counsel and James of the obligation to return for the second day of trial at 8:45 a.m. The Court gave counsel time to contact James and that effort apparently was not successful. The court remained in recess until 10:00 a.m. At that time, the Court held a hearing as required by state law to determine whether James had voluntarily absented himself from the on-going trial. The Court asked counsel "had Mr. James appeared this morning or contacted you with a reason as to non-appearance?"[46] Counsel responded that he had not spoken with James that morning."[47] Based on this and recognizing that James had

---

[44]*State v. James*, 2008 WL 2332237, at *2; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2007-KA-2400, p. 5, 6/6/08; St. Rec. Vol. 1 of 4, Trial Transcript, p. 107, 12/4/06.

[45]*Id.*, at *2; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2007-KA-2400, p. 5, 6/6/08; St. Rec. Vol. 2 of 4, Trial Transcript, p. 177, 12/5/06.

[46]St. Rec. Vol. 2 of 4, Trial Transcript, p. 178, 12/5/06.

[47]*Id.*

been given notice of his duty to return for 8:45 a.m. to continue the trial, the Court found that James voluntarily absented himself. The Court proceeded with a hearing on the motion to suppress and trial thereafter. As required by Louisiana law, the Court also advised the jury that James was not present and "[t]hat does not in any way lesson the burden of proof the State of Louisiana has in connection with this case. They are still obligated to prove the case beyond a reasonable doubt."[48]

At the conclusion of the State's case, James's counsel notified the Court that James had contacted his office that morning and left a message with the secretary that he was sick.[49] James did not re-appear for the duration of the trial.

The record clearly supports the factual findings made by the state trial court. James was present for jury selection and then chose not to return in spite of the notice given him by the trial court to do so. James's argument here also is inconsistent with the record facts relied upon by the state courts. He claims here that the day before trial he was ill and notified counsel's office; he claims also that he again notified counsel's office on the morning of trial that he was still ill and needed the continuance. Curiously, however, James was in fact actually present for the first day of trial when the jury selection was held. It was not until the second day that he chose not to return. Nevertheless, even if he was ill, his absence was no less voluntary.

In addition, the state courts' denial of relief on this issue was not contrary to Supreme Court precedent. As discussed above, the Supreme Court has found under similar facts and circumstances that a defendant, like James, waives his constitutional right to be present when he voluntarily absences himself from an on-going trial. *Taylor*, 414 U.S. at 20. He was aware of that the trial was

---

[48]*Id.*, p. 213.

[49]*Id.*, p. 284.

proceeding, he was advised by the state trial court to be present for 8:45 a.m. for the second day of trial, and he has not provided any sound reasons for his absence.[50]  For these reasons, James is not entitled to relief on this claim.

## IX.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Paul A. James's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 as amended be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's Report and Recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[51]

New Orleans, Louisiana, this 15th day of February, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[50]In *Taylor*, the Supreme Court mentioned in a footnote the holding in *United States v. McPherson*, 421 F.2d 1127, 1130 (D.C. Cir. 1969), which had been relied on by Taylor.  The Court noted that the *McPherson* court found a valid waiver when a defendant was "aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away."  *Taylor*, 414 U.S. at 19 n.3.  The Supreme Court did not apply or adopt this test in the *Taylor* opinion, although some district courts have relied on it as if the *Taylor* court had adopted the test.  *see e.g.*, *Jackson v. Epps*, No. 03-641, 2010 WL 3853158, at *24 (N.D. Miss. Sep. 28, 2010); *Robertson v. Cain*, No. 09-1617, 2011 WL 1540449, at *8 (W.D. La. Mar. 17, 2011) (Report and Recommendation).  Out of an abundance of caution, the Court mentions that James's waiver was valid under the *McPherson* factors.

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.